# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | Criminal Case No. 1:23cr00012-001 |
| v. ) | |
| ) | **REPORT AND** |
| **ZACHARY MICHAEL STOUT,** ) | **RECOMMENDATION** |
| Defendant ) | |

## I. Background

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3), and upon the defendant's written consent, this case was referred to the Honorable Pamela Meade Sargent, United States Magistrate Judge, to conduct a plea hearing.

## II. Facts

The defendant has been charged in a three-count Information. On September 25, 2023, a plea hearing was conducted before the magistrate judge, and the defendant entered pleas of guilty to Counts One, Two and Three of the Information, charging him with conspiracy to distribute and/or possess with intent to distribute 5 grams or more of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and 841(b)(1)(B), possession with intent to distribute 5 grams or more of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

At this hearing, the defendant was placed under oath and testified that he is 26 years old and that he completed high school. The defendant testified that he reads and writes the English language. The defendant denied that he had ever suffered from, been diagnosed with or treated for any type of mental illness. The defendant testified that he had a serious substance abuse history, including the use of methamphetamine, fentanyl and heroin up until the time of his arrest in July 2023. The defendant stated that he had not abused these controlled substances since his arrest and incarceration in July 2023, and that his recent substance abuse, and/or the lack of treatment, did not affect his current ability to make decisions in his best interest, or his ability to understand the nature of the proceedings or the consequences of pleading guilty to the charges he faced. He also testified that he was not under the influence of any drug, medication or alcoholic beverage.

The defendant stated that he was fully aware of his right to grand jury indictment, that he had discussed that right with his counsel and that he wished to waive his right to grand jury indictment and consent to allow the Government's case against him to proceed on the three-count Information filed with the court. The defendant stated that, other than the terms of the Plea Agreement filed in this matter, no one had made any other promises to him or in any way had attempted to force him into waiving his grand jury indictment right. The undersigned accepted the defendant's waiver of his grand jury indictment rights, finding that the defendant was doing so knowingly and voluntarily.

The defendant stated that he was fully aware of the nature of the charges against him and the consequences of pleading guilty to those charges. The defendant

–2–

was advised in open court of the charges contained against him in the Information. He testified that he had fully discussed the charges, and his case in general, with his counsel. He also testified that he had read the Plea Agreement in its entirety, and he had discussed the Plea Agreement with his counsel before signing the Agreement. He stated that he understood the terms of the Plea Agreement and that the document presented to the court set forth his agreement with the Government in its entirety. The defendant specifically testified that he understood that, under the terms of the Agreement, he was waiving any right to directly appeal or collaterally attack his conviction and sentence, insofar as he may legally do so.

The defendant stated that he was pleading guilty of his own free will because he was, in fact, guilty of the offenses charged. The defendant also stated that no one had made any promises, other than those contained in the Plea Agreement with the Government, assurances or threats to him in an effort to induce his pleas. The defendant testified that he understood that the offenses with which he is charged are felonies and that, if his pleas are accepted, he will be adjudged guilty of the offenses and that this adjudication may deprive him of valuable civil rights such as the right to vote, the right to hold public office, the right to serve on a jury and the right to possess a firearm. The defendant further testified that he understood that the offenses with which he is charged are drug offenses and that, if his pleas to these charges are accepted, he will be adjudged guilty of the offenses and that this adjudication will make him ineligible for certain federal benefits including certain Social Security and food stamp benefits.

The defendant was informed of the possible maximum and mandatory

minimum penalties provided by law for the offenses with which he is charged. In particular, the defendant stated that he understood that the offenses to which he was pleading guilty carried a mandatory minimum sentence of 5 years' imprisonment. He further stated that he understood that the mandatory minimum 5 years' imprisonment on the firearms charge must be served consecutively to any other sentence imposed. The defendant stated that he understood that this meant he would serve at least 10 years' imprisonment. The defendant stated that he further understood that his pleas were being entered pursuant to Rule 11(c)(1)(C), and that he and the Government had agreed that he should be sentenced to a term of imprisonment between 120 and 136 months.

The defendant further testified that, under the terms of the Plea Agreement, he was agreeing to forfeit any rights he held in 101 specific firearms and various accessories and rounds of ammunition, as specifically listed in the Plea Agreement.

The defendant also was informed that, under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case.  The defendant testified that he and his counsel had discussed how the Sentencing Guidelines might apply in his case.  The defendant also testified that he understood that the court would not be able to determine the guideline sentence for his case until after a presentence report has been completed, and both parties have an opportunity to challenge the reported facts and the application of the Guidelines. The defendant stated that he understood that, after the applicable guideline range was determined, that the district judge has the authority in some circumstances to depart from the Guidelines and impose a

sentence that is more severe or less severe than the sentence called for by the Guidelines. He stated that he understood that the Sentencing Guidelines were no longer mandatory, and after considering the Guidelines and the factors listed under 18 U.S.C. § 3553(a), the district judge may sentence outside of the Guidelines and up to the statutory maximum sentence. He stated that he understood that the eventual sentence imposed may be different from any estimate his attorney, the U.S. Attorney's Office or the U.S. Probation Office has given him. The defendant further testified that he was agreeing that Sentencing Guideline 2D1.1(c)(4) was applicable to his conduct in this case for a base offense level of 32 for at least 1.5 kilograms, but less than 5 kilograms, of methamphetamine. The defendant stated that he knew that parole had been abolished and that if he is sentenced to prison, he will not be released on parole and will serve his full term of imprisonment.

The defendant also testified that he understood that he had the right to a trial by a jury, in addition to the following rights, which would be waived or given up if his guilty pleas are accepted:

    i.    The right to plead not guilty to any offense charged against him;
    ii.    The right at trial to be presumed innocent and to force the Government to prove his guilt beyond a reasonable doubt;
    iii.    The right of assistance of counsel;
    iv.    The right to see, hear and cross-examine witnesses;
    v.    The right to call witnesses to testify in his own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses; and
    vi.    The right to decline to testify unless he voluntarily elected to do so in his own defense.

The defendant stated that he was fully satisfied with the advice and representation given to him in this case by his counsel. He stated that he had no complaints whatsoever regarding his attorney's representation. The defendant also testified that he understood the possible consequences of his pleas and asked the court to accept his pleas of guilty to Counts One, Two and Three of the Information.

The Government presented the following evidence regarding the offenses with which the defendant is charged:

At times relevant to the Information, the defendant, Zachary Michael Stout, ("Stout"), in the Western District of Virginia and elsewhere, knowingly possessed with the intent to distribute and conspired with others to possess with intent to distribute and distributed five grams or more of methamphetamine, a Schedule II controlled substance. In addition, on or about July 27, 2023, in the Western District of Virginia, Stout knowingly possessed, in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, (conspiracy to possess with intent to distribute and distribute five grams or more of methamphetamine), a firearm.

On April 19, 2022, law enforcement executed a search warrant at the residence of Co-conspirator 1 in Bristol, Virginia. During a search of the residence, law enforcement recovered more than 1,600 grams of nearly pure methamphetamine, approximately 125 grams of heroin, approximately 40 fentanyl pills, approximately $28,000 in U.S. currency, firearms, assorted ammunition and two cellphones.

During a post-arrest interview, Co-conspirator 1 said that he had recently been allowing an acquaintance named "Blocc," (known to investigators as Tyshawn Blackwell), to have methamphetamine delivered to Co-conspirator 1's residence and to use the residence as a "stash house." Co-conspirator 1 explained that, before he started getting methamphetamine from Blackwell, he was being supplied methamphetamine by Stout, who was then being supplied by Blackwell. On Co-conspirator 1's cellphone, agents found several messages between Co-conspirator 1 and Blackwell, and those messages indicated that Co-conspirator 1 was ordering controlled substances from Blackwell.

In October 2022, law enforcement in the Eastern District of Tennessee executed a search warrant at Blackwell's residence in Johnson City, Tennessee. There, law enforcement found a significant number of fentanyl pills, methamphetamine, a pistol and Blackwell's cellphone. On Blackwell's phone, investigators found messages to and from Stout that indicated Stout was ordering distribution quantities of methamphetamine from Blackwell.

In January 2023, Co-conspirator 1 pled guilty to federal drug charges. In subsequent statements, Co-conspirator 1 said that, after he was released from jail in the spring of 2021, he started spending time with Stout and soon moved into the house where Co-conspirator 1 had been arrested. During that period, Co-conspirator 1 started getting one- to two-ounce quantities of methamphetamine from Stout, who was getting the methamphetamine from Blackwell. Co-conspirator 1

explained that Stout sometimes stayed in the apartment behind Co-conspirator 1's residence, and that Stout had a safe in the apartment that contained numerous firearms. Messages from Stout's Facebook account confirm that a drug distributor/sub-distributor relationship existed between Blackwell and Stout. In one exchange during March 2022, for example, Stout sought to obtain three to five kilograms of methamphetamine from Blackwell. Stout's Facebook account also reflected various messages relating to firearms. In one series of messages from January 2022, an individual offered to trade Stout a shotgun in exchange for cash and a half-ounce of methamphetamine. Based on the messages, Stout accepted the offer.

On July 27, 2023, law enforcement executed a search warrant at Stout's residence in Bristol, Virginia. In Stout's residence, law enforcement found approximately 30 grams of methamphetamine (that is, slightly more than one ounce) divided into three separate packages, multiple digital scales, four cell phones, approximately 100 firearms (many of which were loaded), numerous rounds of ammunition, and various high-capacity magazines. Approximately three grams of the methamphetamine tested approximately 97% pure, and the balance of the methamphetamine tested approximately 47% pure. Many of the firearms were located in the same room as, and in close proximity with, the methamphetamine. During an interview, Stout admitted to purchasing methamphetamine from Blackwell. Stout said he paid approximately $400 per ounce and that he broke the methamphetamine into smaller quantities for resale. Stout further admitted that the

firearms in the house were his. Stout said that he kept firearms because he was "the lowest man on the food chain," and he wanted to protect himself. Indeed, drug dealers often keep firearms in connection with their drug-dealing activities in order to protect themselves, their drugs and their money.

## PROPOSED FINDINGS OF FACT

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering informed pleas;
2. The defendant is aware of the nature of the charges and the consequences of his pleas;
3. The defendant knowingly and voluntarily entered pleas of guilty to Counts One, Two and Three of the Information; and
4. The evidence presents an independent basis in fact containing each of the essential elements of the offenses to which the defendant is pleading guilty.

## RECOMMENDED DISPOSITION

Based upon the above findings of fact, the undersigned recommends that this court accept the defendant's pleas of guilty to Counts One, Two and Three of the Information and adjudge him guilty of those offenses.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Michael F. Urbanski, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 26th day of September, 2023.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE